UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| ALBERT W. FARRIS, JR., | ) | |
|---|---|---|
| PLAINTIFF | ) | |
| | ) | |
| v. | ) | No. 2:11-CV-346-DBH |
| | ) | |
| NATHAN POORE, ET AL., | ) | |
| | ) | |
| DEFENDANTS | ) | |

**DECISION AND ORDER ON MOTION TO DISMISS**[1]

This motion to dismiss under Fed. R. Civ. P. 12(b)(6) concerns substantive and procedural due process and equal protection claims arising from the termination of a town's code enforcement officer. I conclude that on the facts alleged in the complaint, the town employee has no federal constitutional claims and I **GRANT** the motion to dismiss.

**BACKGROUND**

For purposes of ruling on the motion, I take the facts alleged in the Complaint as true. The defendant Town of Falmouth employed the plaintiff Albert W. Farris, Jr. as its Code Enforcement Officer beginning in July 2002. Compl. ¶ 7. The defendant Nathan Poore has been the Falmouth Town Manager since 2008. Id. ¶ 8. The defendant Amanda Stearns, who currently serves as Falmouth's Community Development Director, was Farris' supervisor in 2009 and 2010. Id. ¶ 9.

---

[1] Neither side requested oral argument.

Farris performed his duties well and received positive performance reviews until late 2009 or early 2010, when Stearns accused Farris of insubordination. Id. ¶ 10. On February 8, 2010, without prior notice or an explanation, Poore informed Farris that he was terminating Farris's employment due to a "fiscal crisis." Id. ¶ 11. Poore suggested to Farris that he resign in order to "keep things quiet." Id. ¶ 12. Poore then offered Farris money to sign a separation agreement, but Farris refused. Id.

By the end of February of 2010, Poore rescinded the termination and put Farris on what Poore referred to as a "work plan." Id. ¶ 13. On July 7, 2010, Poore informed Farris that Farris would be terminated and replaced by Stearns. Id. ¶ 15. Farris was placed on administrative leave the same day. Id. On July 23, 2010, Poore and Stearns prepared a summary report outlining their complaints against Farris. Id. ¶ 16. Among other things, the report alleged that Farris had refused to make code enforcement decisions in accordance with directives from Poore and Stearns, and asserted that those refusals demonstrated a lack of professionalism and judgment, "insubordination," and an inability to work with Poore and Stearns. Id.[2] Later that day, Farris and his attorney met with representatives of the Town of Falmouth. Id. ¶ 18. At that time, Farris was informed that a termination hearing would be held and that Poore would preside over the hearing and alone decide if there was "just cause" to terminate Farris. Id.

---

[2] Farris alleges that Poore and Stearns regularly attempted to interfere with him in the exercise of his statutory duties by, *inter alia*, directing him to make unlawful Code Enforcement decisions, rescind lawful decisions, and ignore the appeal provisions of the Falmouth Zoning Ordinance to enhance their authority within the Town and benefit their own interpretations of the Ordinance or those of certain Falmouth citizens. Compl. ¶ 14.

In September of 2010, Poore presided over a two-day hearing. Id. ¶ 20. In addition to his role as the hearing officer, Poore offered testimony as a witness. Id. ¶ 20. Poore made the final decision to terminate Farris, and Farris was notified of his termination on September 28, 2010. Id. ¶ 21.

Farris filed his three-count Complaint in Maine Superior Court, asserting federal claims under 42 U.S.C. § 1983—specifically, that the termination deprived him of Fourteenth Amendment substantive and procedural due process and equal protection of the laws. He did not include a claim for review of administrative action under Maine Rule Civil Procedure 80B.[3] The defendants removed the case to this court and filed this motion to dismiss.

## ANALYSIS

### (1) Procedural Due Process

To state a procedural due process claim, a plaintiff "must allege first that it has a property interest as defined by state law and, second, that the defendants, acting under color of state law, deprived it of that property interest without constitutionally adequate process." SFW Arecibo, Ltd. v. Rodriguez, 415 F.3d 135, 139 (1st Cir. 2005) (quoting PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991) (internal quotation marks omitted)). On the first element, the defendants do not dispute that Farris had a property interest in his position as code enforcement officer. The dispute is over the second element: whether the process afforded Farris in the termination proceeding was sufficient.

---

[3] He also does not assert an age discrimination claim. Pl.'s Opp'n to Defs.' Mot. to Dismiss at 8 (Docket Item 5).

3

### *(a) Poore's Authority to Terminate Farris*

Farris asserts that the defendants violated his procedural due process rights by permitting Town Manager Poore to make the final decision to terminate his employment when, as Town Manager, Poore lacked authority to make that decision. He points to an "apparent conflict" between Maine law and the Falmouth Town Charter regarding who has authority to terminate a code enforcement officer. Pl.'s Opp'n to Defs.' Mot. to Dismiss at 4-5 (Docket Item 5).[4]

But an inconsistency between the Falmouth Charter and a state statute does not amount to a procedural due process violation. <u>Lone Star Sec. & Video, Inc. v. City of Los Angeles</u>, 584 F.3d 1232, 1236-37 (9th Cir. 2009); <u>Cole v. Sisto</u>, 2010 WL 2303257, *4 (E.D. Cal. 2010); see also <u>Martinez v. Colon</u>, 54 F.3d 980, 989 (1st Cir. 1995) (citations omitted) ("It is established beyond peradventure that a state actor's failure to observe a duty imposed by state law, standing alone, is not a sufficient foundation on which to erect a section 1983 claim. Although it is true that constitutional significance may attach to certain interests created by state law, not every transgression of state law does double duty as a constitutional violation."). Instead, preemption of a municipal

---

[4] Title 30-A M.R.S.A. § 2601-A states that municipal officers may remove code enforcement officers "only for cause after notice and hearing." Similarly, 38 M.R.S.A. § 441(1) states that "[t]he municipal officers may remove a code enforcement officer for cause, after notice and hearing." Title 30-A M.R.S.A. § 2001(10) defines "municipal officers" as "[t]he selectmen or councillors of a town; or [t]he mayor and aldermen or councillors of a city." The Falmouth Town Charter provides that "[t]he Town Manager shall have the power and shall be required to: Appoint, prescribe the duties of, and, when necessary for the good of the service, remove all employees of the Town . . . ." Charter of Town of Falmouth, Maine, Section 302 (July 1, 2009).

ordinance by state statute is a question of state law.  Smith v. Town of Pittston, 820 A.2d 1200, 1206 (Me 2003).

Alternatively, "when the challenged state action is a flaw in the official's conduct rather than a flaw in the state law itself," such conduct is considered "random and unauthorized," and the procedural due process claim is "limited to the issue of the adequacy of the postdeprivation remedies provided by the state."  Hadfield v. McDonough, 407 F.3d 11, 19-20 (1st Cir. 2005) (citations omitted).  There is no federal procedural due process claim where "the denial of process was caused by the random and unauthorized conduct of government officials and where the state has provided adequate post-deprivation remedies to correct the officials' random and unauthorized acts."  Id. (citations omitted).[5]

The First Circuit has addressed factual situations that are very similar to Farris's.  See O'Neill v. Baker, 210 F.3d 41 (1st Cir. 2000); Cronin v. Town of Amesbury, 81 F.3d 257 (1st Cir. 1996).  In O'Neill, the court stated that if a state statute required certain procedural protections, and a state agency failed to provide them, that failure would be "random and unauthorized."  O'Neill, 210 F.3d at 50.  In Cronin, the court concluded that "even assuming . . . that the Town defendants failed to give [the employee] the procedure he was due in making the decision to terminate him . . ., [the employee] cannot succeed on his procedural due process claim unless he can show that the state failed to

---

[5] The defendants have chosen to couch their argument here as a failure by Farris to exhaust his state remedies.  Farris responds properly that exhaustion is not a requirement under § 1983.  Patsy v. Board of Regents, 457 U.S. 496, 507 (1982).  In reality, the issue here is not exhaustion.  Instead, a sufficient post-deprivation remedy amounts to due process, thus negating the claim on the merits.

provide him with an adequate postdeprivation remedy." Cronin, 81 F.3d at 260 (citing Lowe v. Scott, 959 F.2d 323, 340-41 (1st Cir. 1992)).

Here, Farris had a right to appeal his termination in the state courts under Maine Rule Civil Procedure 80B. Without citation to authority, Farris states that "Rule 80B's procedural and evidentiary limitations, time constraints, and inability to award money damages preclude or hinder the process of obtaining an adequate state remedy." Pl.'s Opp'n to Defs.' Mot. to Dismiss at 5 (Docket Item 5). Farris's dissatisfaction with the relief available under Maine Rule 80B does not negate the fact that relief exists. It is unclear to me what Farris means when he refers to 80B's "procedural and evidentiary limitations, [and] time constraints." But with respect to money damages it is plain that 80B does not need to provide all the same remedies that are available under section 1983 in order to be considered an adequate remedy.[6]

I conclude that Farris has failed to show that postdeprivation review under Rule 80B was inadequate. Farris intentionally "opt[ed] not to pursue an 80B action." Pl.'s Opp'n to Defs.' Mot. to Dismiss at 6. Farris cannot deliberately fail to file an 80B action in state court and then claim that he has

---

[6] "Although the state remedies may not provide [ ] all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process." Parratt v. Taylor, 451 U.S. 527, 544 (1981); see also Hudson v. Palmer, 468 U.S. 517, 531 n.11 (1984). Moreover, although it is clear under Maine law that 80B itself provides no right to money damages, Polk v. Town of Lubec, 756 A.2d 510, 513 (Me. 2000), that does not mean that Farris could not have received some economic value as a result of pursuing his 80B appeal. In Learnard v. Inhabitants of Town of Van Buren, 182 F.Supp.2d 115, 125-126 (D. Me. 2002), for example, the plaintiff, who alleged he was wrongfully terminated from municipal employment, used the procedures for reviewing administrative action under Maine Rule 80B and obtained a new hearing in front of the town council. Thereafter, the town reinstated the plaintiff on administrative leave with pay. Id.

no adequate remedy under state law. The Maine Rule 80B process is an adequate postdeprivation remedy in this case.

In either event, therefore, Farris has no procedural due process claim based upon the Town Manager's asserted lack of authority.

### *(b)     Unbiased Decision Maker*

Farris also alleges that the defendants violated his procedural due process rights by denying him an unbiased decision maker in the termination decision. The right to an unbiased "tribunal" has often been described as a fundamental requirement of due process. See, e.g., Beauchamp v. De Abadia, 779 F.2d 773, 776 (1st Cir. 1985) ("An impartial decisionmaker is, of course, a fundamental component of due process."). However, so long as there is a meaningful *post*deprivation hearing before a fair and impartial tribunal, such a hearing is not required at the *pre*termination stage. Contrary to Farris's premise, it is not required that a *pre*termination hearing be conducted before an impartial decisionmaker. In fact, the hearing may be presided over by the employer. Acosta-Sepulveda v. Hernandez-Purcell, 889 F.2d 9, 12 (1st Cir. 1989) (citing Feliciano–Angulo v. Rivera Cruz, 858 F.2d 40, 44 (1st Cir. 1988)) ("[pretermination] hearing may be presided over by the employer himself"); see also Locurto v. Safir, 264 F.3d 154, 174 (2d Cir. 2001) ("No . . . decisions from our Circuit or other circuits have held that . . . a neutral adjudicator is a necessary component of due process at a pre-termination hearing. We hold that it is not."); McDaniels v. Flick, 59 F.3d 446, 459-60 (3d Cir.1995) (same); Walker v. Berkeley, 951 F.2d 182, 183-84 (9th Cir. 1991) (same); Duchesne v. Williams, 849 F.2d 1004, 1006 (6th Cir. 1988) ("[T]he property interest created

in the normal government job covered by a civil service system, which creates a "just cause" requirement for discharge, does not entitle the employee to an impartial judge at the predetermination 'right-of-reply' hearing."); Garraghty v. Jordan, 830 F.2d 1295, 1302 (4th Cir. 1987) (same); Schaper v. City of Huntsville, 813 F.2d 709, 715 (5th Cir. 1987) (same).[7]

Because Rule 80B provides adequate postdeprivation remedies, I **GRANT** the defendants' motion to dismiss Farris's procedural due process claims.

*(2) Substantive Due Process*

Farris also asserts a substantive due process claim, Pl.'s Opp'n to Defs.' Mot. to Dismiss at 3 n.1, but he does not articulate what it is. The Supreme Court has held that substantive due process claims involve only the most "egregious official conduct" that "shocks the conscience." County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998). The substantive due process inquiry "focuses on 'what' the government has done, as opposed to 'how and when' the government did it." Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990). Even bad faith violations of state law are not necessarily tantamount to unconstitutional deprivations of due process. See Chongris v. Board of Appeals of Town of Andover, 811 F.2d 36, 43 (1st Cir. 1987).

Here, Poore terminated Farris's employment with the Town of Falmouth. As discussed above, Farris contends that Poore had no authority to make the

---

[7] Despite this line of precedent, in Chmielinski v. Massachusetts, 513 F.3d 309, 317-18 (1st Cir. 2008), the court stated that pretermination bias might reach such a level as to become intolerable for purposes of due process if the employee is unable "to present his side of things to correct errors of fact on which the termination decision is based." Farris makes no such allegations in this case. Although Poore presided over and testified during the two-day pretermination hearing, Farris does not allege that any bias on Poore's part deprived Farris of the opportunity to present his version of the facts.

8

termination decision and was a biased decisionmaker. Such allegations, even if true, do not shock the conscience and are insufficient to state a substantive due process claim. Amsden, 904 F.2d at 754 ("before a constitutional infringement occurs, state action must *in and of itself* be egregiously unacceptable, outrageous, or conscience-shocking") (emphasis in original).

I therefore **GRANT** the defendants' motion to dismiss Farris's substantive due process claim.

### *(3)    Equal Protection*

Finally, Farris asserts a "class of one" equal protection claim. Pl.'s Opp'n to Defs.' Mot. to Dismiss at 8-9. But a recent holding by the Supreme Court that "the class-of-one theory of equal protection does not apply in the public employment context," Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 598 (2008), is fatal to Farris's claim.

In Engquist, the Court explained that

> the class-of-one theory of equal protection—which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review—is simply a poor fit in the public employment context. To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship.

553 U.S. at 605. The Court stated that it was guided by the "common-sense realization that government offices could not function if every employment decision became a constitutional matter." Id. at 607 (quoting Connick v. Myers, 461 U.S. 138, 143 (1983)). That rationale applies here.

9

Farris does not address Engquist in his opposition, but instead relies on older case law limited by Engquist. For example, Farris cites Village of Willowbrook v. Olech, 528 U.S. 562 (2000), and First Circuit cases that rely on Olech. The Engquist Court distinguished its holding in Olech—a zoning case—from the public employment context:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise. . . . Unlike the context of arm's-length regulation, such as in Olech, treating seemingly similarly situated individuals differently in the employment context is par for the course.

Engquist, 553 U.S. at 603-04. In the face of Engquist, I **GRANT** the defendants' motion to dismiss the equal protection claim.

## CONCLUSION

As a result, the defendants' motion to dismiss the plaintiff's Complaint in its entirety is **GRANTED**.

**SO ORDERED.**

**DATED THIS 23RD DAY OF JANUARY, 2012**

/S/ D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**